**HARVARD LAW REVIEW**

HARVARD LAW REVIEW FORUM

# On the Meaning of "Natural Born Citizen"

*Commentary by Neal Katyal & Paul Clement*

MAR 11, 2015
128 Harv. L. Rev. F. 161

We have both had the privilege of heading the Office of the Solicitor General during different administrations. We may have different ideas about the ideal candidate in the next presidential election, but we agree on one important principle: voters should be able to choose from all constitutionally eligible candidates, free from spurious arguments that a U.S. citizen at birth is somehow not constitutionally eligible to serve as President simply because he was delivered at a hospital abroad.

The Constitution directly addresses the minimum qualifications necessary to serve as President. In addition to requiring thirty-five years of age and fourteen years of residency, the Constitution limits the presidency to "a natural born Citizen."[1]

1. U.S. CONST. art. II, § 1, cl. 5.



All the sources routinely used to interpret the Constitution confirm that the phrase "natural born Citizen" has a specific meaning: namely, someone who was a U.S. citizen at birth with no need to go through a naturalization proceeding at some later time. And Congress has made equally clear from the time of the framing of the Constitution to the current day that, subject to certain residency requirements on the parents, someone born to a U.S. citizen parent generally becomes a U.S. citizen without regard to whether the birth takes place in Canada, the Canal Zone, or the continental United States.[2]

2. *See, e.g.*, 8 U.S.C. § 1401(g) (2012); Immigration and Nationality Act of 1952, Pub. L. No. 82-414, § 303, 66 Stat. 163, 236–37; Act of May 24, 1934, Pub. L. No. 73-250, 48 Stat. 797.

While some constitutional issues are truly difficult, with framing-era sources either nonexistent or contradictory, here, the relevant materials clearly indicate that a "natural born Citizen" means a citizen from birth with no need to go through naturalization proceedings. The Supreme Court has long recognized that two particularly useful sources in understanding constitutional terms are British common law[3]

3. *See* Smith v. Alabama, 124 U.S. 465, 478 (1888).

and enactments of the First Congress.[4]

4. *See* Wisconsin v. Pelican Ins. Co., 127 U.S. 265, 297 (1888).

Both confirm that the original meaning of the phrase "natural born Citizen" includes persons born abroad who are citizens from birth based on the citizenship of a parent.

As to the British practice, laws in force in the 1700s recognized that children born outside of the British Empire to subjects of the Crown were subjects themselves and explicitly used "natural born" to encompass such children.[5]

5. *See* United States v. Wong Kim Ark, 169 U.S. 649, 655–72 (1898).

These statutes provided that children born abroad to subjects of the British Empire were "natural-born Subjects . . . to all Intents, Constructions, and Purposes whatsoever."[6]

6. 7 Ann., c. 5, § 3 (1708); *see also* British Nationality Act, 1730, 4 Geo. 2, c. 21.

The Framers, of course, would have been intimately familiar with these statutes and the way they used terms like "natural born," since the statutes were binding law in the colonies before the Revolutionary War. They were also well documented in Blackstone's Commentaries,[7]

7. *See* 1 WILLIAM BLACKSTONE, COMMENTARIES *354–63.

a text widely circulated and read by the Framers and routinely invoked in interpreting the Constitution.

No doubt informed by this longstanding tradition, just three years after the drafting of the Constitution, the First Congress established that children born abroad to U.S. citizens were U.S. citizens at birth, and explicitly recognized that such children were "natural born Citizens." The Naturalization Act of 1790[8]

8. Ch. 3, 1 Stat. 103 (repealed 1795).

provided that "the children of citizens of the United States, that may be born beyond sea, or out of the limits of the United States, shall be considered as natural born citizens: Provided, That the right of citizenship shall not descend to persons whose fathers have never been resident in the United States . . . ."[9]

9. *Id.* at 104 (emphasis omitted).

The actions and understandings of the First Congress are particularly persuasive because so many of the Framers of the Constitution were also members of the First Congress. That is particularly true in this instance, as eight of the eleven members

of the committee that proposed the natural born eligibility requirement to the Convention served in the First Congress and none objected to a definition of "natural born Citizen" that included persons born abroad to citizen parents.[10]

10. *See* Christina S. Lohman, *Presidential Eligibility: The Meaning of the Natural-Born Citizen Clause*, 36 GONZ. L. REV. 349, 371 (2000/01).

The proviso in the Naturalization Act of 1790 underscores that while the concept of "natural born Citizen" has remained constant and plainly includes someone who is a citizen from birth by descent without the need to undergo naturalization proceedings, the details of which individuals born abroad to a citizen parent qualify as citizens from birth have changed. The pre-Revolution British statutes sometimes focused on paternity such that only children of citizen fathers were granted citizenship at birth.[11]

11. *See, e.g.*, British Nationality Act, 1730, 4 Geo. 2, c. 21.

The Naturalization Act of 1790 expanded the class of citizens at birth to include children born abroad of citizen mothers as long as the father had at least been resident in the United States at some point. But Congress eliminated that differential treatment of citizen mothers and fathers before any of the potential candidates in the current presidential election were born. Thus, in the relevant time period, and subject to certain residency requirements, children born abroad of a citizen parent were citizens from the moment of birth, and thus are "natural born Citizens."

The original meaning of "natural born Citizen" also comports with what we know of the Framers' purpose in including this language in the Constitution. The phrase first appeared in the draft Constitution shortly after George Washington received a letter from John Jay, the future first Chief Justice of the United States, suggesting:

> *[W]hether it would not be wise & seasonable to provide a . . . strong check to the admission of Foreigners into the administration of our national Government; and to declare expressly that the Command in chief of the american [sic] army shall not be given to, nor devolve on, any but a natural born Citizen.*[12]

12. Letter from John Jay to George Washington (July 25, 1787), in 3 THE RECORDS OF THE FEDERAL CONVENTION OF 1787, at 61 (Max Farrand ed., 1911).

As recounted by Justice Joseph Story in his famous Commentaries on the Constitution, the purpose of the natural born Citizen clause was thus to "cut[] off all chances for ambitious foreigners, who might otherwise be intriguing for the office; and interpose[] a barrier against those corrupt interferences of foreign governments in executive elections."[13]

13. 3 JOSEPH STORY, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES § 1473, at 333 (1833).

The Framers did not fear such machinations from those who were U.S. citizens from birth just because of the happenstance of a foreign birthplace. Indeed, John Jay's own children were born abroad while he served on diplomatic assignments, and it would be absurd to conclude that Jay proposed to exclude his own children, as foreigners of dubious loyalty, from presidential eligibility.[14]

14. *See* Michael Nelson, *Constitutional Qualifications for President*, 17 PRESIDENTIAL STUD. Q. 383, 396 (1987).

While the field of candidates for the next presidential election is still taking shape, at least one potential candidate, Senator Ted Cruz, was born in a Canadian hospital to a U.S. citizen mother.[15]

15. *See* Monica Langley, *Ted Cruz, Invoking Reagan, Angers GOP Colleagues But Wins Fans Elsewhere*, WALL ST. J. (Apr. 18, 2014, 11:36 PM), http://www.wsj.com/articles/SB10001424052702303873604579494001552603692 (http://www.wsj.com/articles/SB10001424052702303873604579494001552603692).

Despite the happenstance of a birth across the border, there is no question that Senator Cruz has been a citizen from birth and is thus a "natural born Citizen" within the meaning of the Constitution. Indeed, because his father had also been resident in the United States, Senator Cruz would have been a "natural born Citizen" even under the Naturalization Act of 1790. Similarly, in 2008, one of the two major party candidates for President, Senator John McCain, was born outside the United States on a U.S. military base in the Panama Canal Zone to a U.S. citizen parent.[16]

16. *See* Michael Dobbs, *John McCain's Birthplace*, WASH. POST: FACT CHECKER (May 20, 2008, 6:00 AM), http://voices.washingtonpost.com/fact-checker/2008/05/john_mccains_birthplace.html (http://voices.washingtonpost.com/fact-checker/2008/05/john_mccains_birthplace.html) [http://perma.cc/5DKV-C7VE (http://perma.cc/5DKV-C7VE)].

Despite a few spurious suggestions to the contrary, there is no serious question that Senator McCain was fully eligible to serve as President, wholly apart from any murky debate about the precise sovereign status of the Panama Canal Zone at the time of Senator McCain's birth.[17]

17. *See, e.g.*, Laurence H. Tribe & Theodore B. Olson, Opinion Letter, *Presidents and Citizenship*, 2 J.L. 509 (2012).

Indeed, this aspect of Senator McCain's candidacy was a source of bipartisan accord. The U.S. Senate *unanimously* agreed that Senator McCain was eligible for the presidency, resolving that any interpretation of the natural born citizenship clause as limited to those born within the United States was "inconsistent with the purpose and intent of the 'natural born Citizen' clause of the Constitution of the United States, as evidenced by the First Congress's own statute defining the term 'natural born Citizen.'"[18]

18. S. Res. 511, 110th Cong. (2008).

And for the same reasons, both Senator Barry Goldwater and Governor George Romney were eligible to serve as President although neither was born within a state. Senator Goldwater was born in Arizona before its statehood and was the Republican Party's presidential nominee in 1964,[19]

19. *See* Bart Barnes, *Barry Goldwater, GOP Hero, Dies*, WASH. POST, May 30, 1998, http://www.washingtonpost.com/wp-srv/politics/daily/may98/goldwater30.htm (http://www.washingtonpost.com/wp-srv/politics/daily/may98/goldwater30.htm) [http://perma.cc/K2MG-3PZL (http://perma.cc/K2MG-3PZL)].

and Governor Romney was born in Mexico to U.S. citizen parents and unsuccessfully pursued the Republican nomination for President in 1968.[20]

20. *See* David E. Rosenbaum, *George Romney Dies at 88; A Leading G.O.P. Figure*, N.Y. TIMES, July 27, 1995, http://www.nytimes.com/1995/07/27/obituaries/george-romney-dies-at-88-a-leading-gop-figure.html (http://www.nytimes.com/1995/07/27/obituaries/george-romney-dies-at-88-a-leading-gop-figure.html).

There are plenty of serious issues to debate in the upcoming presidential election cycle. The less time spent dealing with specious objections to candidate eligibility, the better. Fortunately, the Constitution is refreshingly clear on these eligibility issues. To serve, an individual must be at least thirty-five years old and a "natural born Citizen." Thirty-four and a half is not enough and, for better or worse, a naturalized citizen cannot serve. But as Congress has recognized since the Founding, a person born abroad to a U.S. citizen parent is generally a U.S. citizen from birth with no need for naturalization. And the phrase "natural born Citizen" in the Constitution encompasses all such citizens from birth. Thus, an individual born to a U.S. citizen parent — whether in California or Canada or the Canal Zone — is a U.S. citizen from birth and is fully eligible to serve as President if the people so choose.

---

\* Paul and Patricia Saunders Professor of Law, Georgetown University.

\*\* Distinguished Lecturer in Law, Georgetown University; Partner, Bancroft PLLC.

***Tags:*** *Constitutional Law, Harvard Law Review Forum, Legal History*

MAR '15    VOL **128**    NO. 5

HARVARD LAW REVIEW ©2015