## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **NEWTON BORIS SCHWARTZ, SR., etc.,** | § | |
| | § | **CIVIL ACTION 4:16-cv-00106** |
| **Plaintiff** | § | |
| **v.** | § | |
| | § | **NO JURY** |
| **TED CRUZ A/K/A RAFAEL EDWARD** | § | |
| **CRUZ, INDIVIDUALLY** | | |
| | § | |
| **Defendant** | § | |

## DEFENDANT SENATOR TED CRUZ'S MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT

Layne E. Kruse
  Texas Bar No. 11742550
  Federal ID No. 2383
S. Lee Whitesell
  Texas Bar No. 24093356
  Federal ID No. 2716924
Darren P. Lindamood
  Texas Bar No. 24073560
  Federal ID No. 1430919
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Tel:  (713) 651-5151
Fax:  (713) 651-5246

*Attorneys for Defendant Senator Ted Cruz*

## TABLE OF CONTENTS

MOTION TO DISMISS ........................................................................................................ 1

NATURE AND STAGE OF THE PROCEEDING.................................................................. 1

ISSUES AND STANDARD OF REVIEW ............................................................................ 3

SUMMARY OF ARGUMENT .............................................................................................. 4

ARGUMENT .......................................................................................................................... 4

I.      Plaintiff Lacks Standing to Challenge Senator Cruz's Eligibility for the Office of the President of the United States ....................................................................... 4

II.     Any Challenge to Senator Cruz's Eligibility for the Office of President of the United States Is Not Yet Ripe ................................................................................. 9

III.   This Court Is Not the Proper Forum for Challenging a Presidential Candidate's Qualifications ...................................................................................... 10

IV.   Plaintiff Has Alleged No Cause of Action Because Plaintiff Has No Cause of Action .................................................................................................................. 14

V.     Senator Cruz Is a "Natural Born Citizen" and Is Eligible for the Office of President of the United States .............................................................................. 16

        A.    Every Reliable Source from the Time of the Writing of the U.S. Constitution Confirms That a Person Who Was a U.S. Citizen at Birth—Like Senator Cruz—Is a "Natural Born Citizen" Eligible to Serve as President............................................................................................................ 17

        B.    Historical Precedent Also Confirms That a Person Who Was a U.S. Citizen at Birth Is a "Natural Born Citizen." .................................................. 21

CONCLUSION...................................................................................................................... 24

# TABLE OF AUTHORITIES[†]

**Page(s)**

**Cases**

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967)...................................................................................................9

*Am. Well Works Co. v. Layne & Bowler Co.*,
   241 U.S. 257 (1916)..................................................................................................14

*Ankeny v. Governor of State of Indiana*,
   916 N.E.2d 678 (Ind. Ct. App. 2009)........................................................................22

*Annamarie v. 619 Others*,
   2013 WL 363778 (D. Md. Jan. 29, 2013)...................................................................5

*Annamarie v. Electors for the State*,
   2013 WL 1726360 (D.N.D. Mar. 13, 2013) ...............................................................4

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009)................................................................................................3

*Barnett v. Obama*,
   2009 WL 3861788 (C.D. Cal. Oct. 29, 2009), *aff'd sub nom. Drake v. Obama*,
   664 F.3d 774 (9th Cir. 2011) ......................................................................................4

*Bates v. Laminack*,
   938 F. Supp. 2d 649 (S.D. Tex. 2013) ........................................................................3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................................3

*Berg v. Obama*,
   574 F. Supp. 2d 509 (E.D. Pa. 2008), *aff'd,* 586 F.3d 234 (3d Cir. 2009)...........5, 15

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
   403 U.S. 388 (1971)..................................................................................................15

*Blanchette v. Conn. Gen. Ins. Corps.*,
   419 U.S. 102 (1974)....................................................................................................9

---

[†] Defendant will separately file an appendix of authorities as indicated in item 7.B.1 of Judge Miller's Procedures.

*Bowhall v. Obama*,
  2010 WL 4932747 (M.D. Ala. Nov. 30, 2010), *aff'd*, No. 10-15938-C (11th
  Cir. Apr. 4, 2011) ................................................................................................ 4, 13

*Bowsher v. Synar*,
  478 U.S. 714 (1986) ................................................................................................ 18

*Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*,
  462 F.3d 219 (2nd Cir. 2006) .................................................................................. 9

*Brown & Root, Inc. v. Big Rock Corp.*,
  383 F.2d 662 (5th Cir.1967) .................................................................................... 6

*Bustos v. Martini Club Inc.*,
  599 F.3d 458 (5th Cir. 2010) ................................................................................... 3

*Cohen v. Obama*,
  2008 WL 5191864 (D.D.C. Dec. 11, 2008), *aff'd*, 332 F. App'x 640 (D.C. Cir.
  2009) ......................................................................................................................... 5

*Cook v. Good*,
  2009 WL 2163535 (M.D. Ga. July 16, 2009) ......................................................... 5

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) .................................................................................................. 6

*Dawson v. Obama*,
  2009 WL 532617 (E.D. Cal. Mar. 2, 2009) ............................................................ 5

*De La Paz v. Coy*,
  786 F.3d 367 (5th Cir. 2015) .................................................................................. 14

*Fed. Nat'l Mortg. Ass'n v. Cobb*,
  738 F. Supp. 1220 (N.D. Ind. 1990) ....................................................................... 2

*Fontenot v. McCraw*,
  777 F.3d 741 (5th Cir. 2015) .................................................................................... 6

*Froelich v. FEC*,
  855 F. Supp. 868 (E.D. Va. 1994), *aff'd*, 57 F.3d 1066 (4th Cir. 1995) ................ 8

*FW/PBS, Inc. v. City of Dallas*,
  493 U.S. 215 (1990) .................................................................................................. 3

*Gibson v. Pa. Pub. Utils. Comm'n*,
  1:15-CV-00855, 2015 WL 3952777 (M.D. Pa. June 18, 2015), *aff'd*, No. 15-
  2872 (3d Cir. Feb. 1, 2016) .................................................................................... 15

*Glen v. Club Mediterranee S.A.*,
    365 F. Supp. 2d 1263 (S.D. Fla. 2005). ...............................................................16

*Greenwich Ins. Co. v. Miss. Windstorm Underwriting Ass'n*,
    808 F.3d 652 (5th Cir. 2015) ................................................................................15

*Grinols v. Electoral Coll.*,
    2013 WL 2294885 (E.D. Cal. May 23, 2013), *aff'd on other grounds*, 622 F.
    App'x 624 (9th Cir. 2015) .........................................................................4, 12, 13

*Ex parte Grossman*,
    267 U.S. 87 (1925)..................................................................................................18

*Hamblin v. Obama*,
    2009 WL 2513986 (D. Ariz. Aug. 14, 2009), *appeal dismissed*, 09- 17014 (9th
    Cir. Nov. 6, 2009) ....................................................................................................5

*Hockessin Holdings, Inc v. Ocwen Loan Servicing, L.L.C.*,
    No. 5:15-CV-1103-DAE, 2016 WL 247727 (W.D. Tex. Jan. 19, 2016)................15

*Hollander v. McCain*,
    566 F. Supp. 2d 63 (D.N.H. 2008).....................................................................5, 22

*Hotze v. Burwell*,
    784 F.3d 984 (5th Cir. 2015) ...................................................................................3

*Hunter v. U.S. Supreme Court*,
    2009 WL 111683 (N.D. Tex. Jan. 16, 2009), *appeal dismissed*, No. 09-10246
    (5th Cir. July 23, 2009) ............................................................................................5

*Jebaco, Inc. v. Harrah's Operating Co.*,
    587 F.3d 314 (5th Cir. 2009) ...................................................................................3

*Jones v. Hobbs*,
    745 F. Supp. 2d 886 (E.D. Ark. 2010) ...................................................................15

*Kerchner v. Obama*,
    669 F. Supp. 2d 477 (D.N.J. 2009), *aff'd*, 612 F.3d 204 (3d Cir. 2010)...................4

*Keyes v. Bowen*,
    189 Cal. App. 4th 647 (Cal. Ct. App. 2010) ..........................................................14

*Lance v. Coffman*,
    549 U.S. 437 (2007) (per curiam)............................................................................8

*Last Name Uncertain v. Electors for the State of Kentucky*,
    2012 WL 5398565 (W.D. Ky. Nov. 5, 2012) ...........................................................5

*LeClerc v. Webb,*
  419 F.3d 405 (5th Cir. 2005) ........................................................................9

*Ex Parte Levitt,*
  302 U.S. 633 (1937) (per curiam) ...............................................................7, 8

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
  134 S. Ct. 1377 (2014) .................................................................................6

*Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.,*
  875 F. Supp. 2d 791 (W.D. Tenn. 2012) .........................................................5

*Lowden v. William M. Mercer, Inc.,*
  903 F. Supp. 212 (D. Mass. 1995) .................................................................2

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ...................................................................................6, 8

*McNutt v. Gen. Motors Acceptance Corp. of Indiana,*
  298 U.S. 178 (1936) .....................................................................................3

*Md. Cas. Co. v. Pac. Coal & Oil Co.,*
  312 U.S. 270 (1941) .....................................................................................6

*Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.,*
  No. CIV.A. 3:08-CV-1658-, 2009 WL 3075205 (N.D. Tex. Sept. 25, 2009) ........15

*Minor v. Happersett,*
  88 U.S. 162 (1875)......................................................................................17

*Miss. State Democratic Party v. Barbour,*
  529 F.3d 538 (5th Cir. 2008) ........................................................................9

*Mylan Pharm., Inc. v. Thompson,*
  268 F.3d 1323 (Fed. Cir. 2001).....................................................................15

*Oppenheimer v. F.J. Young & Co.,*
  3 F.R.D. 220 (S.D.N.Y. 1943) .......................................................................2

*Presidents and Citizenship*
  (March 19, 2008) ........................................................................................17

*Raines v. Byrd,*
  521 U.S. 811 (1997).....................................................................................8

*Reade v. Galvin,*
  2012 WL 5385683 (D. Mass. Oct. 30, 2012), *aff'd,* No. 12-2406 (1st Cir. June
  11, 2013) ....................................................................................................4

*Reid v. Aransas Cty.*,
  805 F. Supp. 2d 322 (S.D. Tex. 2011) ....................................................................15

*Riethmiller v. Electors for State of Alabama*,
  2012 WL 5042026 (M.D. Ala. Oct. 2, 2012)............................................................5

*Riethmiller v. Electors for the State of New Jersey*,
  2013 WL 1501868 (D.N.J. Apr. 11, 2013) , *appeal dismissed*, No. 13-2335
  (3d Cir. May 31, 2013) ..............................................................................................4

*Riethmiller v. Electors for the State of Virginia*,
  2012 WL 4742363 (W.D. Va. Oct 4, 2012)..............................................................5

*Robinson v. Bowen*,
  567 F. Supp. 2d 1144 (N.D. Cal. 2008) ........................................................5, 12, 22

*Rowan Cos. v. Griffin*,
  876 F.2d 26 (5th Cir. 1989) .......................................................................................6

*Sibley v. Alexander*,
  916 F. Supp. 2d 58 (D.D.C. 2013) ...........................................................................5

*Sibley v. Obama*,
  866 F. Supp. 2d 17 (D.D.C. 2012), *aff'd*, 2012 WL 6603088 (D.C. Cir. Dec. 6,
  2012) ..........................................................................................................................4

*Simon v. E. Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976)..................................................................................................5, 9

*Smith v. Alabama*,
  124 U.S. 465 (1888).................................................................................................17

*Strunk v. N.Y. State Bd. of Elections*,
  No. 6500/11, 2012 WL 1250117 (N.Y. Sup. Ct. Apr. 11, 2012)............................13

*Strunk v. Obama*,
  880 F. Supp. 2d 1 (D.D.C. 2011) ..............................................................................5

*Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*,
  137 F.2d 176 (5th Cir. 1943) .....................................................................................6

*Texas v. United States*,
  497 F.3d 491 (5th Cir. 2007) .....................................................................................9

*United States v. Wong Kim Ark*,
  169 U.S. 649 (1897).............................................................................................17, 19

*United Transp. Union v. Foster*,
205 F.3d 851 (5th Cir. 2000) ........................................................................9

*Valley Forge Christian Coll. v. Americans United for Separation of Church &
State, Inc.*,
454 U.S. 464 (1982) ......................................................................................6

*Van Allen v. New York State Bd. of Elections*,
36 Misc. 3d 1212(A), 954 N.Y.S.2d 762 (Sup. Ct. 2012) ........................5

*Voeltz v. Obama*,
2012 WL 4117478 (Fla. Cir. Ct. Sept. 6, 2012), *mandamus denied*, 126 So.3d
1059 (Fla. 2013) ......................................................................................5, 13

*White v. U.S. Pipe & Foundry Co.*,
646 F.2d 203 (5th Cir. 1981) ....................................................................6, 7

*Ex parte William Wells*,
18 How. (59 U.S.) .......................................................................................18

*Wisconsin v. Pelican Ins. Co.*,
127 U.S. 265 (1888) ....................................................................................18

*Wolfe v. Charter Forest Behavioral Health Sys., Inc.*,
185 F.R.D. 225 (W.D. La. 1999) ..................................................................2

*Zivotofsky v. Kerry*,
135 S. Ct. 2076 (2015) ...............................................................................20

**Constitutional Provisions**

U.S. Const. art. II, § 1, cl.2 ...............................................................................10

Natural Born Citizen Clause,
U.S. Const. art. II, § 1, cl. 4 ......................................................................16

U.S. Const. art. III ................................................................................ *passim*.

U.S. Const. amend. XII .................................................................................. 11

U.S. Const. amend. XX .................................................................................. 11

**Statutes and Rules**

3 U.S.C. § 15 ....................................................................................................12

8 U.S.C. § 1401 ...........................................................................................20, 24

British Nationality Act, 1730,
4 Geo. 2, c. 21 .........................................................................................................19

Naturalization Act of 1790,
ch. 3, 1 Stat. 104, 104 ............................................................................................18

Declaratory Judgment Act,
28 U.S.C. § 2201(a) .............................................................................................6, 15

Fed. R. Civ. P. 10 ............................................................................................................2

Fed. R. Civ. P. 12(f) ........................................................................................................2

Fed. R. Civ. P. 12(b) ...................................................................................................1, 3

Fed. R. Civ. P. 15(a)(2) ...................................................................................................1

Fed. R. Evid. 801(d)(2) ...................................................................................................7

**Dictionaries**

Oxford English Dictionary (1961) ................................................................................21

Black's Law Dictionary (various editions) ...................................................................21

Webster's New International Dictionary (1923) ...........................................................21

Alexander M. Burrill, *A New Law Dictionary and Glossary* (1850) ...........................20

Henry James Holthouse, *A New Law Dictionary* (1847) .............................................21

James Whishaw, *A New Law Dictionary* (1829) .........................................................21

**Other Authorities**

Paul Clement & Neal Katyal, *On the Meaning of "Natural Born Citizen"*, 128
Harv. L. Rev. ...............................................................................................17, 19, 22

Max Farrand, *The Records of the Federal Convention of 1787* (rev. ed. 1937) .....................19, 20

THE FEDERALIST No. 52 .................................................................................................20

Jack Maskell, *Qualifications for President and the "Natural Born" Citizenship
Eligibility Requirement* (Cong. Research Serv., Report No. R42097, Nov. 14,
2011) ......................................................................................................................23

Eustace Seligman, *A Brief for Governor Romney's Eligibility for President*
113 Cong. Rec. 35019 (1967) .................................................................................22

Thomas Walter Williams, *A Compendious and Comprehensive Law Dictionary* (1816)...........................................................................................................21

10B Charles Alan Wright, *et al.*, *Federal Practice & Procedure* § 2763 (3d ed.).........................6

S. Res. 511, 110th Cong. (2008) .................................................................................. 22

**MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

Defendant Senator Ted Cruz moves to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  Plaintiff lacks standing and has not pled the elements of any cause of action, and the constitutional issue he raises presents a non-justiciable political question.  Even if he could overcome these jurisdictional barriers (any one of which requires dismissal), Plaintiff has not alleged facts sufficient to state a claim.  Plaintiff is essentially implicating the Court in a political dispute that it lacks authority to adjudicate.  The Court should reject the invitation and dismiss the complaint.

**NATURE AND STAGE OF THE PROCEEDING**

Plaintiff filed this suit on January 14, 2016.  Plaintiff's Original Complaint (Dkt. 1).  He amended his complaint once on January 19, and a second time on February 3.  Plaintiff's second amendment was impermissible under Federal Rule of Civil Procedure 15(a)(2).  Rather than assert this error, Defendant, without waiving any objections or defenses, consented to its filing and accepted service on February 8, 2016.  Defendant's Notice of Consent to Filing Second Amended Complaint and Acceptance of Service (Dkt. 9).  In his Second Amended Complaint, Plaintiff asks the Court to declare that Defendant, United States Senator Ted Cruz, is ineligible to serve as President of the United States.  Plaintiff's Second Amended Original Complaint (Dkt. 7) ("SAC").

The nature of this proceeding, however, is unclear, in no small part because Plaintiff's pleadings are deficient. Plaintiff has peppered the Court's docket with two amendments to his complaint and three "memoranda" in which he has attempted to brief legal issues not raised.[1]

---

[1] These memoranda are procedurally improper and the Court should strike them from the record. Plaintiff is required to allege facts sufficient to establish standing in his complaint and should not be allowed to attempt to cure defects with separate arguments.  Much as this lawsuit fails to identify any

Each successive paper purports to incorporate the earlier ones—essentially creating an incomprehensible stream of supplementation outside the contours of Rule 15—but fails to "'specifically identify which portions of the prior pleading are adopted therein.'" *Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 216 (D. Mass. 1995) (quoting *Fed. Nat'l Mortg. Ass'n v. Cobb*, 738 F. Supp. 1220, 1227 (N.D. Ind. 1990)).  Plaintiff's pleadings are therefore devoid of the "specificity and clarity which would enable the responding party to easily determine the nature and extent of the incorporation." *Wolfe v. Charter Forest Behavioral Health Sys., Inc.*, 185 F.R.D. 225, 229 (W.D. La. 1999); *see also Oppenheimer v. F.J. Young & Co.*, 3 F.R.D. 220, 226 (S.D.N.Y. 1943) (doubting that Rule 10(c) "contemplates . . . cross reference in an amended pleading to a previously abandoned pleading" and noting the that "it would be inconvenient to the plaintiffs themselves, as well as to the defendants, to have to go outside of an amended pleading for a statement of a material part of its claim").

Moreover, Plaintiff's original and amended complaints make it difficult, if not impossible, to identify his claims and the factual bases for them.  *See* Fed. R. Civ. P. 10(b) ("A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.").  After reciting a number of facts that he acknowledges "are largely irrelevant to the Court's decision," Plaintiff then states that "the American people are entitled to remove . . . this Constitutional cloud overhanging their vote" and "prays for a Declaratory Judgement adjudicating and deciding whether or not Defendant Cruz is eligible to . . . serve as President[.]"  SAC at 11.[2]  "What makes a pleading a 'shotgun' pleading is the inclusion of irrelevant and unrelated facts not tied to specific causes of action such that the

---

actual case or controversy, these misdirected memoranda were improperly filed before any issue was joined.

[2] The Court should strike or ignore those facts that are "redundant, immaterial, impertinent, or scandalous," Fed. R. Civ. P. 12(f), such as Plaintiff's gratuitous commentary on primary politics. *E.g.*, SAC at 2 n.3; *id.* at 10-11 (discussing Iowa's political dynamics).

claims made are indeterminate and the defendant's task in defending against them is significantly impaired." *Bates v. Laminack*, 938 F. Supp. 2d 649, 667 (S.D. Tex. 2013).  Defendant here has been "significantly impaired" in even ascertaining Plaintiff's claims, to say nothing of defending against them.

In any case, Plaintiff cannot maintain an attack on Senator Cruz's presidential eligibility for the reasons that follow.

## ISSUES AND STANDARD OF REVIEW

This Rule 12 motion asks the Court to dismiss the suit in its entirety with prejudice.  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'"  *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).  "Moreover, the complaint must allege 'more than labels and conclusions,' 'a formulaic recitation of the elements of a cause of action will not do,' and 'factual allegations must be enough to raise a right to relief above the speculative level.'"  *Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 318 (5th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Plaintiff "must allege in his pleading the facts essential to show jurisdiction.  If he fails to make the necessary allegations he has no standing."  *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936).  "[I]f the plaintiff does not carry his burden 'clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute,' then dismissal for lack of standing is appropriate."  *Hotze v. Burwell*, 784 F.3d 984, 993 (5th Cir. 2015) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)).

## SUMMARY OF ARGUMENT

This case suffers from fatal deficiencies. Most formidably, there is no case or controversy that this Court has the power to adjudicate: Plaintiff—alleging no injury and praying for no redress—lacks standing to raise prematurely what would in any case present a non-justiciable political question. And, even looking past these insurmountable Article III barriers, the gravamen of Plaintiff's argument is simply incorrect: Senator Cruz is a "natural born citizen" eligible to serve as President of the United States.

## ARGUMENT

### I.   Plaintiff Lacks Standing to Challenge Senator Cruz's Eligibility for the Office of the President of the United States.

An individual citizen does not have standing to challenge a candidate's eligibility to serve as president. Mere anxiety over this issue is not sufficient to implicate Article III of the U.S. Constitution. This Court should join the countless courts that have considered the issue[3] and dismiss Plaintiff's claim for lack of standing.

---

[3] *See, e.g.*, *Grinols v. Electoral Coll.*, 2013 WL 2294885 (E.D. Cal. May 23, 2013) ("Plaintiffs lack standing to bring this action."), *aff'd on other grounds*, 622 F. App'x 624 (9th Cir. 2015); *Reade v. Galvin*, 2012 WL 5385683 (D. Mass. Oct. 30, 2012) ("To the extent that Reade is attempting to bring a claim to remove President Obama's name from the presidential ballot on the ground that he is ineligible for that office, Reade lacks standing."), *aff'd*, No. 12-2406 (1st Cir. June 11, 2013); *Annamarie v. Electors for the State*, 2013 WL 1726360 (D.N.D. Mar. 13, 2013) ("Additionally, she lacks standing to challenge President Obama's eligibility to run for or serve as President of the United States."), *report and recommendation adopted*, No. 3:12-cv-85, 2013 WL 2158412 (D.N.D. Apr. 22, 2013), *appeal dismissed*, No. 13-2040 (8th Cir. July 11, 2013); *Riethmiller v. Electors for the State of New Jersey*, 2013 WL 1501868 (D.N.J. Apr. 11, 2013) ("Plaintiff's Complaint will be dismissed as frivolous because Plaintiff lacks Article III standing."), *appeal dismissed*, No. 13-2335 (3d Cir. May 31, 2013); *Sibley v. Obama*, 866 F. Supp. 2d 17 (D.D.C. 2012) ("Plaintiff lacks standing to challenge President Obama's current tenure in office, just as others who have made similar claims contesting President Obama's eligibility for the presidency were found to lack standing."), *aff'd*, 2012 WL 6603088 (D.C. Cir. Dec. 6, 2012) ("Petitioner's remaining claims are likewise without merit for the reasons stated by the district court."); *Bowhall v. Obama*, 2010 WL 4932747, (M.D. Ala. Nov. 30, 2010) ("Mr. Bowhall's lack of standing to challenge their actions."), *aff'd*, No. 10-15938-C (11th Cir. Apr. 4, 2011) (affirming order that complaint was frivolous); *Barnett v. Obama*, 2009 WL 3861788 (C.D. Cal. Oct. 29, 2009), *aff'd sub nom. Drake v. Obama*, 664 F.3d 774 (9th Cir. 2011) ("The District Court properly dismissed the plaintiffs' constitutional claims for lack of Article III standing."); *Kerchner v. Obama*, 669 F. Supp. 2d 477 (D.N.J. 2009)

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976).  "If a dispute is not

("Without an 'injury in fact' necessary for Article III standing, the Court cannot exercise jurisdiction over the present action."), *aff'd*, 612 F.3d 204 (3d Cir. 2010) ("We therefore agree with the District Court that Appellants lack standing."); *Cohen v. Obama*, 2008 WL 5191864 (D.D.C. Dec. 11, 2008) ("Plaintiff's claims fail because he does not have standing to pursue them."), *aff'd*, 332 F. App'x 640 (D.C. Cir. 2009) ("The district court properly held appellant did not allege an injury sufficient to confer Article III standing."); *Berg v. Obama*, 574 F. Supp. 2d 509 (E.D. Pa. 2008) ("[Plaintiff] does not have standing to pursue this matter and we do not have jurisdiction to hear it."), *aff'd*, 586 F.3d 234 (3d Cir. 2009) ("In sum, we agree with the District Court that Berg lacks standing to bring this suit because he has suffered no injury particularized to him."); *Hamblin v. Obama*,  2009 WL 2513986 (D. Ariz. Aug. 14, 2009) ("Plaintiff's alleged injuries flow from Plaintiff's interest in voting for eligible candidates for elected office. Plaintiff's interest is held in common by all members of the public. That common interest does not confer standing on Plaintiff."), *appeal dismissed*, 09- 17014 (9th Cir. Nov. 6, 2009); *Hunter v. U.S. Supreme Court*, 2009 WL 111683 (N.D. Tex. Jan. 16, 2009) ("Plaintiff's claim of harm fails because it is 'conjectural or hypothetical,' leaving plaintiff without standing to sue for the requested relief."), *appeal dismissed*, No. 09-10246 (5th Cir. July 23, 2009); *Sibley v. Alexander*, 916 F. Supp. 2d 58, 59-60 (D.D.C. 2013) ("For all these reasons, Sibley's action must be dismissed for lack of standing."); *Annamarie v. 619 Others*, 2013 WL 363778 (D. Md. Jan. 29, 2013) ("Additionally, it is noted that plaintiff does not have standing to bring this action."); *Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.*, 875 F. Supp. 2d 791 (W.D. Tenn. 2012) ("The Court holds that none of the named Plaintiffs have alleged specific facts to demonstrate their standing to bring this suit."); *Annamarie ? Last Name Uncertain v. Electors for the State of Kentucky*, 2012 WL 5398565 (W.D. Ky. Nov. 5, 2012) ("Plaintiff lacks standing to challenge Obama's candidacy and eligibility to be on the ballot as she has suffered no injury particularized to her."); *Riethmiller v. Electors for the State of Virginia*, 2012 WL 4742363 (W.D. Va. Oct 4, 2012) ("The plaintiff lacks legal standing to assert the claims set forth in her Complaint and accordingly the court lacks subject-matter jurisdiction."); *Riethmiller v. Electors for State of Alabama*, 2012 WL 5042026 (M.D. Ala. Oct. 2, 2012) ("To the extent that plaintiff alleges injury by virtue of having an ineligible candidate placed on the ballot by electors in Alabama (a state in which she does not reside), any such injury does not confer standing on the plaintiff."), *report and recommendation adopted*, 2012 WL 5045219 (M.D. Ala. Oct. 18, 2012) ("While Plaintiff claims to have suffered injury personally, in addition to the injury allegedly suffered by the 650 other petitioners, she still fails to allege facts sufficient to demonstrate the constitutional requirement of standing."); *Strunk v. Obama*, 880 F. Supp. 2d 1 (D.D.C. 2011) ("[Plaintiff] thus lacks standing to bring his claim."); *Cook v. Good*, 2009 WL 2163535 (M.D. Ga. July 16, 2009) ("Major Cook does not have standing to pursue this action."); *Dawson v. Obama*, 2009 WL 532617 (E.D. Cal. Mar. 2, 2009) ("Plaintiff has suffered no cognizable injury and lacks Article III standing."); *Hollander v. McCain*, 566 F. Supp. 2d 63 (D.N.H. 2008) ("What is settled, however, is that an individual voter like Hollander lacks standing to raise that challenge in the federal courts."); *Robinson v. Bowen*, 567 F. Supp. 2d 1144 (N.D. Cal. 2008) ("Plaintiff lacks standing to bring this lawsuit."); *Voeltz v. Obama*, 2012 WL 4117478 (Fla. Cir. Ct. Sept. 6, 2012) ("Because Plaintiff lacks standing, the Court is without subject matter jurisdiction to consider his complaint for declaratory relief."), *mandamus denied*, 126 So.3d 1059 (Fla. 2013); *Van Allen v. New York State Bd. of Elections*, 36 Misc. 3d 1212(A), 954 N.Y.S.2d 762 (Sup. Ct. 2012) ("In view of petitioner's lack of standing to maintain the instant proceeding . . .").

a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006).  Rather than a matter of prudence or a mere technicality, "standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).[4]

To establish standing, a "plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014); *Fontenot v. McCraw*, 777 F.3d 741, 746 (5th Cir. 2015).  These three elements—injury in fact, causation, and redressability— are "an irreducible minimum" of Article III justiciability.  *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982).

Plaintiff fails every aspect of this test but most glaringly cannot meet "the 'injury in fact' element of standing" that "lies at the core of article III concepts of the limits of the exercise of the federal judicial power."  *White v. U.S. Pipe & Foundry Co.*, 646 F.2d 203, 206 (5th Cir.

---

[4] That Plaintiff is seeking a declaratory judgment does not affect this analysis.  "It is immaterial that frequently, in the declaratory judgment suit, the positions of the parties in the conventional suit are reversed; the inquiry is the same in either case." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *see* Declaratory Judgments Act, 28 U.S.C. § 2201(a) ("In *a case of actual controversy* within its jurisdiction . . . upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.") (emphasis added).  Thus "the District Court is without power to grant declaratory relief unless such a controversy exists." *Md. Cas. Co.*, 312 U.S at 272 (1941).  The Declaratory Judgment Act "is a procedural statute that provides an additional remedy for use in cases of which the federal courts already have jurisdiction." *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 137 F.2d 176, 179 (5th Cir. 1943). The Fifth Circuit has left no room for doubt on this point: "A controversy, to be justiciable, must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop." *Rowan Cos. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989) (quoting *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 665 (5th Cir.1967)). In part for these reasons, "[t]he Supreme Court has frequently . . . indicated a marked reluctance to have important issues of public law resolved by declaratory judgments."  10B Charles Alan Wright, et al., *Federal Practice & Procedure* § 2763 (3d ed.).

1981).   Nowhere does Plaintiff, who acknowledges that he is a Democrat, *see* Exhibits to Plaintiff's Memorandum of Law Regarding His Standing (Dkt. 4),[5] explain how he is harmed by Senator Cruz's presence on the Republican primary ballot.   The closest he comes to articulating an interest in the subject matter of this action is his assertion that "it is politically beneficial to both Defendant Cruz as well as the entire United States . . . for this Court to decide whether" Senator Cruz is eligible.   SAC at 10.   But that assertion is insufficient to create the required "injury in fact" as a matter of law.

To the extent Plaintiff alleges an abstract harm to the political process, that is not a cognizable interest for purposes of Article III standing.   In *Schlesinger v. Reservists Committee to Stop the War*, the Supreme Court held that the plaintiffs lacked standing to pursue a claim alleging that certain members of Congress were ineligible for office under the Constitution's Incompatibility Clause.   418 U.S. 208, 200 (1974).   The Court explained that "standing to sue may not be predicated upon an interest . . . which is held in common by all members of the public," *id.*, and that the standing requirement carries "particular[ ]" weight in cases "seek[ing] an interpretation of a constitutional provision which has never before been construed by the federal courts."   *Id.* at 221; *see also Ex Parte Levitt*, 302 U.S. 633, 634 (1937) (per curiam) (holding plaintiff lacked standing to challenge eligibility of Hugo Black to serve on U.S. Supreme Court because "it is not sufficient that [plaintiff] has merely a general interest common to all members of the public").

Plaintiff also suggests that the Court's resolution is necessary "[i]n order to cast an intelligible and meaningful vote . . . now and on November 8, 2016."   *Id.* at 11.   This proposed injury, if indeed it is one, fares no better.   In *Jones v. Bush*, the court held that three Texas voters

---

[5] Defendant maintains his objection to this filing and urges the Court to strike it. *See supra* n.1. Plaintiff's ballot for the Democrat primary is admissible under Federal Rule of Evidence 801(d)(2).

lacked standing to bring a suit alleging that George W. Bush and Dick Cheney were ineligible to receive Texas's electoral votes under the Twelfth Amendment.  122 F. Supp. 2d 713, 715 (N.D. Tex. 2000), *aff'd*, 244 F.3d 134 (5th Cir. 2000).  The court explained that the alleged "violation of [plaintiffs'] right to cast a 'meaningful vote,'" *id*. at 716, was insufficient to confer standing because their alleged injury was "undifferentiated and general" and "plaintiffs [had] conspicuously fail[ed] to demonstrate how they, as opposed to the general voting population, will feel its effects."  *Id*. at 717; *see also Froelich v. FEC*, 855 F. Supp. 868, 870 (E.D. Va. 1994) (holding plaintiffs lacked standing to bring a suit alleging that they were "denied a meaningful vote" by U.S. Senate candidates' acceptance of out-of-state campaign contributions because the plaintiffs' alleged injury was "hypothetical," "abstract," and "common to all Virginia voters"), *aff'd*, 57 F.3d 1066 (4th Cir. 1995).

It is not clear that these purported interests are injuries even in the colloquial sense—Defendant's presence on any ballot does not exclude Plaintiff's preferred candidates and he clearly does not think he is susceptible to casting an "unintelligent" vote.  But even if they were injuries in some non-doctrinal sense of the word, they are neither "concrete nor particularized." *Lujan*, 504 U.S. at 560.  Accordingly, Plaintiff's challenge to Senator Cruz's status as a natural born citizen is precisely the type of "generally available grievance" about a candidate's eligibility for office that is foreclosed by the Constitution's particularized injury requirement. Because Plaintiff's claim presents an "undifferentiated, generalized grievance," *Lance v. Coffman*, 549 U.S. 437, 442 (2007) (per curiam), he has not "met [his] burden of establishing that [his] claimed injury is personal, particularized, concrete, and otherwise judicially cognizable."  *Raines v. Byrd*, 521 U.S. 811, 820 (1997).

"The necessity that the plaintiff who seeks to invoke judicial power stand to profit in some personal interest remains an Art. III requirement.   A federal court cannot ignore this requirement without overstepping its assigned role in our system of adjudicating only actual cases and controversies."  *Simon*, 426 U.S. at 39.   This case, like others advancing similar claims, is outside the bounds of Article III and must be dismissed.  *See supra* n.3.

## II.    Any Challenge to Senator Cruz's Eligibility for the Office of President of the United States Is Not Yet Ripe.

Plaintiff's claim is also unripe.  As an initial matter, the defect in the alleged injury for standing also creates a ripeness problem.  "Ripeness often overlaps with standing, 'most notably in the shared requirement that the injury be imminent rather than conjectural or hypothetical.'" *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008) (quoting *Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 225 (2nd Cir. 2006)).

Further, the ripeness doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."  *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967); *Texas v. United States*, 497 F.3d 491, 498 (5th Cir. 2007) (same). "The ripeness doctrine counsels against 'premature' adjudication by distinguishing matters that are 'hypothetical' or 'speculative' from those that are poised for judicial review."  *LeClerc v. Webb*, 419 F.3d 405, 413-14 (5th Cir. 2005) (quoting *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000)).  This is especially true when the abstract disagreements of the parties implicate constitutional questions.  *See Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 138 (1974) ("[T]o the extent that questions of ripeness involve the exercise of judicial restraint from unnecessary decision of constitutional issues, the Court must determine whether to exercise that restraint and cannot be bound by the wishes of the parties.").

Here, Plaintiff asks this court for a declaration "adjudicating and deciding whether or not Defendant Cruz is eligible to be elected and certified by the Electoral College vole [sic] and serve as President of the United States."  SAC at 11.  But this formulation of Plaintiff's alleged injury actually acknowledges that this is not the time for a court to address the constitutional question of his eligibility, because we are still in the period of the party primaries.  Thus, inasmuch as Senator Cruz has not yet been officially nominated as the Republican Party's candidate—or yet elected President—it would be "premature," as a constitutional matter, for a court to address the issue.

### III.    This Court Is Not the Proper Forum for Challenging a Presidential Candidate's Qualifications.

The question of whether a candidate for President of the United States is eligible to take office is one within the purview of the Electoral College and the U.S. Congress, not this Court.

The U.S. Constitution provides that "Each State shall appoint, in such Manner as the Legislature thereof may direct," electors for the President and Vice President."  U.S. Const. art. II, § 1, cl.2.  The Constitution's commitment to the Electoral College of the responsibility to select the President includes the authority to decide whether a presidential candidate is qualified for office, because the examination of a candidate's qualifications is an integral component of the electors' decision-making process.  If a court were to sit in judgment of a candidate's qualifications before the nation has voted, and before the Electoral College has cast its votes, such a judgment would inappropriately interfere with the Electoral College's constitutional authority to elect the President and to evaluate the qualifications of the candidates seeking that office.

The Constitution also provides that, after the Electoral College has voted, further review of a presidential candidate's eligibility for office rests with the U.S. Congress.  Should a

candidate elected by the Electoral College fail to satisfy the Constitution's eligibility requirements, the Twentieth Amendment explicitly grants Congress the responsibility for selecting a President.  *See id.* amend. XX, § 3 ("the Congress may by law provide for the case wherein neither a President elect nor a Vice President elect shall have qualified, declaring who shall then act as President, or the manner in which one who is to act shall be selected, and such person shall act accordingly until a President or Vice President shall have qualified").

Additionally, should no candidate receive a majority of the electoral votes, the Constitution commits to the U.S. House of Representatives the authority to select the President—and, in so doing, to evaluate the candidates' qualifications.  *See id.* amend. XII.  Indeed, both the House and the Senate have standing committees with jurisdiction to decide questions relating to presidential elections.  *See* S. R. 25.1(n)(1)(5) (Senate Committee on Rules and Administration has jurisdiction over "proposed legislation, messages, petitions, memorials, and other matters relating to . . . Federal elections generally, including the election of the President, Vice President, and Members of the Congress"); H. R. 10.1(k)(12) (House Committee on House Administration has jurisdiction over "Election of the President, Vice President, . . .; credentials and qualifications; and Federal elections generally").

By committing the question exclusively to the Electoral College and to the U.S. Congress, the Constitution has guaranteed that neither the States nor the courts will reach conflicting decisions regarding whether a candidate meets the requirements of Article II.  To ensure that the nation never faces the turmoil that would be caused by conflicts among the courts—or the States—the political question doctrine bars federal and state courts alike from deciding that question.  Rather, the Constitution has left it to the Electoral College to pass the first judgment on the qualifications of the candidate.  And once the Electoral College has done

so, it then falls to Congress alone to pass on the constitutional eligibility of the successful candidate.

Several courts have recognized the Constitution's commitment of the question of a candidate's eligibility under Article II to the voters, the Electors, and ultimately the Congress. For example, in declining to reach the merits of a challenge to Senator John McCain's eligibility for the office of President, the Court in *Robinson v. Bowen*, 567 F. Supp. 2d 1144 (N.D. Cal. 2008), ruled:

> It is clear that mechanisms exist under the Twelfth Amendment and 3 U.S.C. § 15 for any challenge to any candidate to be ventilated when electoral votes are counted, and that the Twentieth Amendment provides guidance regarding how to proceed if a president elect shall have failed to qualify. Issues regarding qualifications for president are quintessentially suited to the foregoing process. Arguments concerning qualifications or lack thereof can be laid before the voting public before the election and, once the election is over, can be raised as objections as the electoral votes are counted in Congress. The members of the Senate and the House of Representatives are well qualified to adjudicate any objections to ballots for allegedly unqualified candidates. Therefore, this order holds that the challenge presented by plaintiff is committed under the Constitution to the electors and the legislative branch, at least in the first instance.

*Id.* at 1147.

Similarly, in *Grinols v. Electoral College*, No. 2:12-CV-02997, 2013 WL 2294885 (E.D. Cal. May 23, 2013), a challenge to President Obama's eligibility for the office of President, the Court concluded:

> These various articles and amendments of the Constitution make clear that the Constitution assigns to Congress, and not to federal courts, the responsibility of determining whether a person is qualified to serve as President of the United States. As such, the question presented by Plaintiffs in this case—whether President Obama may legitimately run for office and serve as President—is a political question that the Court may not answer. Accordingly, this Court, like numerous other district courts that have dealt with this issue to date, declines to reach the merits of Plaintiffs' allegations because doing so would ignore the Constitutional limits imposed on the federal courts.

2013 WL 2294885, at *6; *see also Bowhall v. Obama*, 2010 WL 4932747, at *1 (M.D. Ala. Nov. 30, 2010) ("Further, his claim that the President is a non-natural born citizen is not justiciable by this court."), *aff'd*, No. 10-15938-C (11th Cir. Apr. 4, 2011) (affirming district court's order and ruling that complaint was frivolous).

Likewise, the court in *Strunk v. N.Y. State Bd. of Elections*, No. 6500/11, 2012 WL 1250117 (N.Y. Sup. Ct. Apr. 11, 2012), explained that "the exclusive means to resolve objections to the electors' selection of a President or a Vice President" is "by members of the Senate and House of Representatives" at the "meeting of the joint session of Congress" held to count Electoral College votes. *Id* at *12. The Court recognized the dangers entailed by improper judicial interference in the political process:

> If a state court were to involve itself in the eligibility of a candidate to hold the office of President, a determination reserved for the Electoral College and Congress, it may involve itself in national political matters for which it is institutionally ill-suited and interfere with the constitutional authority of the Electoral College and Congress. Accordingly, the political question doctrine instructs this Court and other courts to refrain from superseding the judgments of the nation's voters and those federal government entities the Constitution designates as the proper forums to determine the eligibility of presidential candidates.

*Id*; *see also Voeltz v. Obama*, No. 2012-ca-02063, 2012 WL 4117478, at *5 (Fla. Cir. Ct. Sept. 6, 2012) ("It is the conclusion of this Court that issues concerning President Obama's eligibility to be President of United States have been committed under the Constitution to the presidential electors and the Congress and, as a consequence, this Court lacks subject matter jurisdiction to consider the issue.").

This makes perfect sense, of course. If every single state election official and every single court in the country were permitted to independently evaluate a candidate's eligibility for the office of President, chaos would ensue:

13

In any event, the truly absurd result would be to require each state's election official to investigate and determine whether the proffered candidate met eligibility criteria of the United States Constitution, giving each the power to override a party's selection of a presidential candidate. The presidential nominating process is not subject to each of the 50 states' election officials independently deciding whether a presidential nominee is qualified, as this could lead to chaotic results. Were the courts of 50 states at liberty to issue injunctions restricting certification of duly-elected presidential electors, the result could be conflicting rulings and delayed transition of power in derogation of statutory and constitutional deadlines.

*Keyes v. Bowen*, 189 Cal. App. 4th 647, 660 (Cal. Ct. App. 2010).

In sum, because the Constitution commits the question of whether a candidate meets the qualifications of the Natural Born Citizen Clause to the U.S. Congress, federal and state courts—as well as all other federal and state authorities—are barred from deciding the question.

**IV.    Plaintiff Has Alleged No Cause of Action Because Plaintiff Has No Cause of Action.**

In addition to his lack of standing and the political nature of the question presented, Plaintiff does not identify any cause of action against which his pleading might be compared. Plaintiff's often immaterial factual recitations occasionally give way to vague rhetoric about the importance of Article II, but nowhere does he identify "the law that creates the cause of action." *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916). This is because there is no such law: neither the Constitution nor any statute creates a right of action for a voter anxious about a candidate's Article II eligibility.

The Constitution's substantive provisions are largely not self-enforcing; this is especially obvious when one observes that Article III restricts federal jurisdiction, and especially important for those provisions whose enforcement is committed to the political branches and to the People. The few judicially recognized exceptions to this general rule are inapposite here. A challenge to Article II eligibility is certainly not an implied constitutional cause of action. *See De La Paz v. Coy*, 786 F.3d 367, 372 (5th Cir. 2015) (expressing skepticism about the availability of implied

14

causes beyond those few limited scenarios approved in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and progeny).  Nor can plaintiff rely on preemption under the Constitution's Supremacy Clause, which, although providing a cause of action, only serves to challenge official state action.  *See Greenwich Ins. Co. v. Miss. Windstorm Underwriting Ass'n*, 808 F.3d 652, 655 (5th Cir. 2015).

The only statutes Plaintiff cites are either immigration statutes, which he obviously has no private right to enforce, and the Declaratory Judgment Act.[6]  But "to invoke relief under the Federal Declaratory Judgment Act a plaintiff must have an underlying and viable cause of action."  *Hockessin Holdings, Inc v. Ocwen Loan Servicing, L.L.C.*, No. 5:15-CV-1103-DAE, 2016 WL 247727, at *5 (W.D. Tex. Jan. 19, 2016).  And "[i]t is well established that [t]he federal Declaratory Judgment Act . . . does not create a substantive cause of action" but is "merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law."  *Reid v. Aransas Cty.*, 805 F. Supp. 2d 322, 339 (S.D. Tex. 2011) (quoting *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, No. CIV.A. 3:08-CV-1658-, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (quotation marks omitted)).

In short, Plaintiff cannot use the procedural mechanism of the Declaratory Judgement Act to conjure up a cause of action where none exists.  *Accord  Mylan Pharm., Inc. v. Thompson*, 268 F.3d 1323, 1332 (Fed. Cir. 2001) (holding declaratory relief unavailable because the Federal Food, Drug, and Cosmetic Act did not provide plaintiff a private cause of action); *Jones v.*

---

[6] Plaintiff does not cite 42 U.S.C. § 1983, a commonly invoked cause of action for constitutional violations.  This avenue, however, is also foreclosed: it can only be brought against those acting under color of state law, and is not available to challenge alleged ineligibility under Article II.  *See Gibson v. Pa. Pub. Utils. Comm'n*, 1:15-CV-00855, 2015 WL 3952777, at *6 (M.D. Pa. June 18, 2015) ("But there is no cognizable private right of action under § 1983 for an alleged violation of the Natural Born Citizen Clause.  Therefore, to the extent [a plaintiff] seeks to assert a federal civil rights claim based on the Natural Born Citizen Clause, his complaint fails to state a claim upon which relief can be granted."), *aff'd*, No. 15-2872 (3d Cir. Feb. 1, 2016) (citing *Berg v. Obama*, 574 F. Supp. 2d 509, 522–23 (E.D. Pa. 2008), *aff'd*, 586 F.3d 234 (3d Cir. 2009)).

*Hobbs,* 745 F. Supp. 2d 886, 893 (E.D. Ark. 2010) ("[T]he Declaratory Judgment Act does not authorize actions to decide whether federal statutes have been or will be violated when no private right of action to enforce the statutes has been created by Congress."); *Glen v. Club Mediterranee S.A.,* 365 F. Supp. 2d 1263 (S.D. Fla. 2005) ("[J]udicial review is unavailable where no express provision for judicial relief exists."), *aff'd,* 450 F.3d 1251 (11th Cir. 2006).

## V.  Senator Cruz Is a "Natural Born Citizen" and Is Eligible for the Office of President of the United States.

The standing and jurisdictional bars to this lawsuit are insurmountable.  This case should be dismissed for these reasons alone.  But make no mistake:  Based on the allegations and admissions in the plaintiff's own complaint, there is no claim stated upon which relief can be granted.  Senator Cruz is plainly a natural born citizen and is eligible for the office of President of the United States. Plaintiff has not—and indeed, could not—allege facts sufficient to show otherwise.

The U.S. Constitution states that "No Person except a natural born Citizen, or a Citizen of the United States, at the time of the Adoption of this Constitution, shall be eligible to the Office of President."  U.S. Const. art. II, § 1, cl. 4.

Although the Constitution does not define the phrase "natural born Citizen," its meaning is not difficult to determine.  As a matter of ordinary meaning, to describe a person as "natural born" is to say that the person was vested with a particular trait at birth.  For example, a proud parent might describe a child as a "natural born" musician or athlete.  The parent's meaning is plain:  The child was born with certain musical or athletic talents, as opposed to another child who might not have acquired those talents until sometime after their birth.  And the same meaning applies here.

Indeed, every judicial decision and virtually every constitutional authority agrees that a "natural born Citizen" is anyone who was a citizen at the moment they were born—as opposed to becoming a citizen through the naturalization process at some point after their birth.  *See, e.g.*, Paul Clement & Neal Katyal, *On the Meaning of "Natural Born Citizen"*, 128 Harv. L. Rev. F. 161, 161 (Mar. 11, 2015) ("All the sources routinely used to interpret the Constitution confirm that the phrase 'natural born Citizen' has a specific meaning:  namely, someone who was a U.S. citizen at birth with no need to go through a naturalization proceeding at some later time."); Laurence H. Tribe & Theodore B. Olson, *Presidents and Citizenship* (March 19, 2008), *reprinted in* 2 Pub. L. Misc. 509 (2012) ("The U.S. Supreme Court gives meaning to terms that are not expressly defined in the Constitution by looking to the context in which those terms are used; to statutes enacted by the First Congress; and to the common law at the time of the Founding. These sources all confirm that the phrase 'natural born' includes . . . birth abroad to parents who were citizens.") (citations omitted).

A.   **Every Reliable Source from the Time of the Writing of the U.S. Constitution Confirms That a Person Who Was a U.S. Citizen at Birth—Like Senator Cruz—Is a "Natural Born Citizen" Eligible to Serve as President.**

"The constitution does not, in words, say who shall be natural-born citizens.  Resort must be had elsewhere to ascertain that."  *United States v. Wong Kim Ark*, 169 U.S. 649, 655 (1897) (quoting *Minor v. Happersett*, 88 U.S. 162, 167 (1875)).  For example, "[t]he interpretation of the constitution of the United States is necessarily influenced by the fact that its provisions are framed in the language of the English common law, and are to be read in the light of its history." *Id.* (quoting *Smith v. Alabama*, 124 U.S. 465, 478 (1888)).  The Court also looks to enactments "passed by the first Congress assembled under the Constitution, many of whose members had

17

taken part in framing that instrument," as "contemporaneous and weighty evidence of its true meaning." *Wisconsin v. Pelican Ins. Co.*, 127 U.S. 265, 297 (1888).

That makes sense. The first United States Congress was convened just three years after the drafting of the Constitution, so its enactments are strong indicators of what particular terms meant to the Framers at the time the Constitution was written. *See, e.g.*, *Bowsher v. Synar*, 478 U.S. 714, 723 (1986) (the views of the First Congress provide "contemporaneous and weighty evidence of the Constitution's meaning") (quotations omitted).

Similarly, British law at the time of the Founding of the United States also provides essential context for determining the meaning of terms used by the Framers of the Constitution. They were, after all, raised in the British legal tradition. *See, e.g.*, *Ex parte Grossman*, 267 U.S. 87, 108-09 (1925) ("The language of the Constitution cannot be interpreted safely except by reference to the common law and to the British institutions as they were when the instrument was framed and adopted."); *Ex parte William Wells*, 18 How. (59 U.S.) 307, 311 (1855) ("We must then give the word the same meaning as prevailed here and in England at the time it found a place in the constitution.")

With respect to the phrase "natural born Citizen," the First Congress and British law at the time of the Founding are in agreement—a person who is a citizen at birth is a "natural born" citizen. In 1790, the First Congress enacted legislation explicitly providing that "the children of citizens of the United States, that may be born beyond sea, or out of the limits of the United States, shall be considered as *natural born citizens*." Naturalization Act of 1790, ch. 3, 1 Stat. 104, 104 (emphasis added). This is particularly compelling considering that the First Congress included eight of the eleven members of the committee that proposed the Natural Born Citizen

18

Clause at the Constitutional Convention.   None of them objected to the 1790 statute.   *See Clement & Katyal*, *supra* at 163.

Similarly, British law dating back to the 1350s, and in force at the time of Founding, made clear that children born outside the British Empire to a subject of the Crown were themselves subjects of the Crown at birth, emphasizing that those children were accordingly "*natural-born Subjects* . . . to all Intents, Constructions, and Purposes whatsoever."   British Nationality Act, 1730, 4 Geo. 2, c. 21 (emphasis added).   The Supreme Court has favorably cited "Mr. Dicey, in his careful and thoughtful Digest of the Law of England with Reference to the Conflict of Laws, published in 1896" for the proposition that "'Natural-born British subject' means a British subject who has become a British subject at the moment of his birth."   *Wong Kim Ark*, 169 U.S. at 657 (some quotation marks omitted).   British law further recognized that "[i]t is competent to any country to confer by general or special legislation the privileges of nationality upon those who are born out of its own territory . . . .   Great Britain considers and treats such persons as natural-born subjects."   *Id.* at 671-72.

The original understanding of "natural born Citizen"—anyone who was a citizen of the United States at the moment of their birth—also comports with the Framers' purpose in adopting this requirement in the Constitution.   The Framers included the Natural Born Citizen Clause in response to a 1787 letter from John Jay to George Washington, in which Jay suggested that the Constitution prohibit "Foreigners" from attaining the position of Commander in Chief.   *See* Letter from John Jay to George Washington (July 25, 1787), *in* 3 *The Records of the Federal Convention of 1787* 61 (Max Farrand ed., 1911) (asking "whether it would not be wise & seasonable to provide a . . . strong check to the admission of Foreigners into the administration of our national Government" and suggesting that the Constitution "declare expressly that the

19

Command in chief of the [A]merican army shall not be given to, nor devolve on, any but a natural *born* citizen.").

It is inconceivable that the Framers intended to exclude a U.S. citizen at birth from holding the office of President, simply because of where he or she happened to be born.  After all, that individual is not a "foreigner"—but rather, a U.S. citizen from birth.  Indeed, it is particularly unlikely that Jay himself would have held such a view, considering that, when he wrote this letter to Washington, he was serving abroad as the Secretary of Foreign Affairs and had already fathered three children abroad.  Surely Jay did not believe his own children were "foreigners" who were constitutionally ineligible to hold the office of President.

Moreover, note what the text of the Constitution does *not* say:  The Constitution also requires that a person have "been fourteen Years a *resident* within the United States" to serve as President.  It does *not* say that a person must be "born" "within the United States."  Indeed, many members of the Framing era used the term "native" citizen during the debates over the Constitution.  *See* 2 M. Farrand, *The Records of the Federal Convention of 1787* 236, 243 (rev. ed. 1937); *see also* THE FEDERALIST No. 52, at 326 (J. Madison) (Clinton Rossiter ed., 1961).  But they did not limit Presidential eligibility to "native" U.S.-born Americans.

And though the meaning of "natural born Citizen" has never been decided by the U.S. Supreme Court, Justice Clarence Thomas has stated (and no other Justice disagreed) that "children born abroad to U.S. parents, subject to some exceptions, are natural-born citizens who do not need to go through the naturalization process."  *Zivotofsky v. Kerry*, 135 S. Ct. 2076, 2110 (2015) (Thomas, J., concurring in part and dissenting in part).  Indeed, Justice Thomas explicitly invoked the successor to the statute that conferred citizenship at birth on Senator Cruz in his description of "natural-born citizens."  *See id.* (citing 8 U.S.C. § 1401(g)).

All these sources comport with the common understanding of the term "natural" or "natural born."  Not surprisingly, then, numerous dictionary definitions of these terms also reflect this interpretation.[7]  Similarly, numerous legal dictionaries define "natural born" to mean born with "allegiance" to—that is, born a citizen of—a particular nation.[8]

### B.  Historical Precedent Also Confirms That a Person Who Was a U.S. Citizen at Birth Is a "Natural Born Citizen."

American history and practice, as evidenced by previous candidates for President who were born outside the United States, also confirms this original understanding of the term "natural born Citizen."

In 2008, for example, it was widely understood that Senator and presidential candidate John McCain was a natural born citizen due to his birth to U.S. citizen parents notwithstanding

---

[7] *See*, *e.g.*, 7 *Oxford English Dictionary* 38 (1961) (defining "natural born" as "having a specified position or character by birth; used esp. with subject"); *The Compact Edition of the Oxford English Dictionary* 1899 (1971) (defining "natural-born" as "Having a specified position of character by birth; used esp. with subject"—"1701 Act 7 Anne x. 5 § 3 The Children of all natural-born Subjects, born out of the Ligeance of her Majesty . . . shall be deemed .  . to be natural-born Subjects of this Kingdom."— "1833 Penny Cycl. I. 338/2 It is not true that every person, born out of the dominion of the crown, is therefore an alien; nor is a person born within them necessarily a natural-born subject."); *id.* (defining "natural" as "Having a certain relative status by birth; natural-born"); Webster's New International Dictionary 1439 (1923) (defining "natural-born" as "Having a (certain) status or character by birth; as, natural-born citizens; a natural-born coward"); *id.* (defining "natural" as "Of, from, or by, birth; natural-born; as, a natural fool; a natural athlete or musician; existing or characteristic from birth; innate; inborn; as, natural instincts or talents.").

[8] Note, for example, *Black's Law Dictionary*.  *See Black's Law Dictionary* (1st ed. 1891) (defining "natural-born subject" as "born within the dominions, or rather within the allegiance, of the king"); *Black's Law Dictionary* (2nd ed. 1910) (same); *Black's Law Dictionary* (3rd ed. 1933) (same); *Black's Law Dictionary* (4th ed. 1941) (same); *Black's Law Dictionary* (5th ed. 1979) (same); *see also Black's Law Dictionary* (6th ed. 1990) (defining "natural born citizen" for the first time to include "those born of citizens temporarily residing abroad").

Other legal dictionaries from the Founding era reflect the same meaning.  *See*, *e.g.*, Thomas Walter Williams, *A Compendious and Comprehensive Law Dictionary* (1816) (defining "Natural Born Subjects" as "born within the dominions of the crown of England; that is, within the ligeance, or, as it is generally called, the allegiance of the king"); James Whishaw, *A New Law Dictionary* (1829) (same); Henry James Holthouse, *A New Law Dictionary* (1847) (Henry Penington ed., Am. ed.) (defining "Natural Born Subjects" as "Those who are born within the dominions, or rather within the allegiance of the King of England"); Alexander M. Burrill, *A New Law Dictionary and Glossary* (1850) (defining "Natural-Born Subjects" as "Such persons as are born within the dominions of the crown of England, that is, within the ligeance, or, as it is generally called, the allegiance of the king").

that he was born in the Panama Canal Zone.  Indeed, the U.S. Senate unanimously passed a resolution confirming that Senator McCain is a natural born citizen, due to his birth to U.S. citizen parents.  *See* S. Res. 511, 110th Cong. (2008) ("previous presidential candidates were born outside of the United States of America and were understood to be eligible to be President," consistent with "the purpose and intent of the 'natural born Citizen' clause of the Constitution of the United States, as evidenced by the First Congress's own statute defining the term 'natural born Citizen'").

Courts uniformly concluded that Senator McCain was eligible to serve as President on account of his birth to citizen parents.  *See, e.g.*, *Robinson v. Bowen*, 567 F. Supp. 2d 1144, 1146 (N.D. Cal. 2008) (finding it "highly probable . . . that Senator McCain is a natural born citizen" due to his birth to at least one U.S. citizen parent, before dismissing case for lack of standing); *Hollander v. McCain*, 566 F. Supp. 2d 63, 66 & n.3 (D. N.H. 2008) (noting that "the weight of the commentary falls heavily on the side of eligibility" for persons born outside the United States to at least one U.S. citizen parent, before dismissing case for lack of standing); *Ankeny v. Governor of State of Indiana*, 916 N.E.2d 678, 685 n.10 (Ind. Ct. App. 2009) ("Plaintiffs do not cite any authority or develop any cogent legal argument for the proposition that a person must actually be born within one of the fifty States in order to qualify as a natural born citizen.").

And Senator McCain is but one example.  Governor George Romney, born in Mexico to U.S. citizen parents, was also understood to be a natural born citizen when he ran for President in 1968.  *See, e.g.*, Clement & Katyal, *supra* at 164; *see also* S. Res. 511, 110th Cong. (2008) ("previous presidential candidates were born outside the United States of America and were understood to be eligible to be President"); Eustace Seligman, *A Brief for Governor Romney's Eligibility for President*, 113 Cong. Rec. 35019, 35020 (1967) ("It is well settled that the term

'natural born' citizen (or subject) included not only all those born within the territorial limits of England or of the Colonies but likewise all those who were citizens at birth, wherever their birthplaces might be."); *id.* at 35021 ("Governor Romney, who was a citizen of the United States from his birth by virtue of his parentage, is a natural-born citizen and therefore is eligible under the constitution to be elected to the office of President of the United States.").

Unsurprisingly, then, the Congressional Research Service ("CRS")—a non-partisan agency within the Library of Congress that provides legal and policy analysis to members of Congress—has come to the same conclusion.  In 2011, the CRS issued a report concluding that the "weight of legal and historical authority indicates that the term 'natural born' citizen would mean a person who is entitled to U.S. citizenship 'by birth' or 'at birth,'" including "by being born abroad to U.S. citizen-parent."  Jack Maskell, *Qualifications for President and the "Natural Born" Citizenship Eligibility Requirement* (Cong. Research Serv., Report No. R42097, Nov. 14, 2011), http://www.fas.org/sgp/crs/misc/R42097.pdf; *id.* at 50 ("The weight of more recent federal cases, as well as the majority of scholarship on the subject, also indicates that the term 'natural born citizen' would most likely include, as well as native born citizens, those born abroad to U.S. citizen-parents, at least one of whom had previously resided in the United States, or those born abroad to one U.S. citizen parent who, prior to the birth, had met the requirements of federal law for physical presence in the country.").

* * *

In sum, Founding-era sources, congressional statements, historical precedent, case law, and the overwhelming weight of scholarly authority all command the same conclusion:  a "natural born Citizen" is a person who was a U.S. citizen at birth, without the need for later naturalization.

And there is no dispute over whether Senator Cruz meets that definition.  At the time of Senator Cruz's birth, 8 U.S.C. § 1401(a)(7) provided that:  "The following shall be nationals and citizens of the United States at birth: . . . a person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years."[9]

Senator Cruz satisfies this provision.  He was born outside the United States, and his mother was a U.S. citizen who was physically present in the U.S. for more than ten years, including at least five after attaining the age of 14.  Accordingly, Senator Cruz was a United States citizen at the moment of his birth—and thus is a "natural born Citizen" eligible to serve as President of the United States.

## CONCLUSION

Plaintiff here would have this Court step outside the bounds of Article III and issue a declaratory judgment merely to satisfy his curiosity.  Senator Cruz is a natural-born citizen of the United States and the Constitution commits any challenges to that status to the political branches and to the People.  For any or all of the foregoing reasons, the Court should reject Plaintiff's effort and dismiss this lawsuit with prejudice.

---

[9] Today, the relevant law is codified at 8 U.S.C. § 1401(g) (2012): "The following shall be nationals and citizens of the United States at birth: . . . a person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than five years, at least two of which were after attaining the age of fourteen years."

Respectfully submitted,


_/s/ *Layne E. Kruse*_____
Layne E. Kruse
Texas Bar No. 11742550
Federal ID No. 2383
layne.kruse@nortonrosefulbright.com
S. Lee Whitesell
Texas Bar No. 24093356
Federal ID No. 2716924
lee.whitesell@nortonrosefulbright.com
Darren P. Lindamood
Texas Bar No. 24073560
Federal ID No. 1430919
darren.lindamood@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Tel:  (713) 651-5151
Fax:  (713) 651-5246
**ATTORNEYS FOR DEFENDANT**



## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 22nd day of February, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notifications of such filing to plaintiff Newton B. Schwartz, Sr.


_____/s/ *Layne E. Kruse*_____
Layne E. Kruse

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| NEWTON BORIS SCHWARTZ, SR. | § | |
| INDIVIDUALLY AND/OR AS (B) CLASS | § | |
| REPRESENTATIVE AND/OR ON | § | |
| BEHALF OF ALL ELIGIBLE TEXAS AND | § | |
| NATIONALLY UNITED STATES | § | |
| REGISTERED (C) ELIGIBLE AND/OR | § | |
| QUALIFIED VOTERS FOR VOTING IN | § | |
| THE 2016 FIFTY STATE ELECTION | § | Civil Action No. 4:16-CV-00106 |
| PRIMARIES AND IN THE NOVEMBER 1, | § | |
| 2016 GENERAL PRESIDENTIAL AND | § | |
| VICE PRESIDENT 2016 ELECTIONS, | § | |
| | § | |
| Plaintiff, | § | NO JURY |
| | § | |
| v. | § | |
| | § | |
| TED CRUZ A/K/A RAFAEL EDWARD | § | |
| CRUZ, INDIVIDUALLY, | § | |
| | § | |
| Defendant. | § | |

## <u>ORDER</u>

The Court has considered Defendant's motion to dismiss. The Court, having considered the parties' submissions, hereby grants defendant's motion.  Plaintiffs' claims against defendant Ted Cruz are dismissed with prejudice.


Signed at Houston, Texas, on _____, 2016.


_____
Gray H. Miller
United States District Judge